28961, 28962. CLARY *v.* McRAE *et al.;* and *vice versa.*

DECIDED DECEMBER 3, 1941. REHEARING DENIED DECEMBER 16, 1941.

*T. Reuben Burnside, James A. Branch, Thomas B. Branch Jr.,* for plaintiff.

*John B. McCallum, Madison Richardson, G. S. Peck,* for defendants.

BROYLES, C. J. H. E. Clary sued William G. McRae, George G. Finch, C. J. Camp, and Ful-Kalb Inc., for damages in the amount of $9500. The amended petition (formal parts omitted)

is substantially as follows: 1. The defendants are William G. McRae, George G. Finch and C. J. Camp, all of Fulton County, Georgia, and Ful-Kalb Inc., a corporation having its principal office and place of business in said county. 2. Defendants have damaged petitioner and are indebted to him in the sum of $9500. 3. William G. McRae and George G. Finch are licensed attorneys at law and practice law in the State of Georgia and have their offices in said county. 4. Ful-Kalb Inc. was chartered by the superior court of said county for the purpose of engaging in the business of dealing in real estate, and was so engaged at the time hereinafter referred to. 5. At the times hereinafter referred to C. J. Camp was president of Ful-Kalb Inc. and actively in charge of the business and affairs of said corporation. 6. At the times hereinafter referred to all of said defendants occupied the same suite of offices in the First National Bank Building in Atlanta, Georgia. 7. At the times hereinafter referred to William G. McRae and George G. Finch each had a financial interest in Ful-Kalb Inc., and participated in the profits therefrom, the details and extent of such participation being at present unknown to petitioner. 8. In July, 1932, and prior thereto, petitioner was the owner and holder of two promissory notes in the principal sum of $1000 each, dated December 21, 1922, signed by Silvey Speer McKenzie and M. C. McKenzie, and payable to the order of Mrs. Nellie Pearl Neal. These notes bore interest from date at eight per cent. per annum and were both past due in July, 1932. 9. Prior to July, 1932, petitioner had delivered said notes to Randall Evans Jr., a member of the bar of McDuffie County, for collection. 10. On or about October 24, 1932, said Evans, acting for petitioner, turned over said notes to William G. McRae for collection. 11. When said notes were turned over to said McRae, it was agreed that they were to be handled by him, in association with said Evans, for collection upon a contingent fee of fifty per cent. of the amount collected, of which said fee said McRae was to receive two thirds and the remaining one third was to be paid to said Evans. 12. On October 24, 1932, William G. McRae receipted for said notes, and specified the terms on which they were to be handled for collection in a writing signed by him, a copy of which is as follows:

"Atlanta, Georgia. Received for collection from Randall Evans Jr., attorney for H. E. Clary, two notes against Silvey S. McKenzie and M. C. McKenzie, payable to Mrs. Nellie Pearl Neal, and transferred by J. H. Clary, attorney in fact for said Mrs. Neal, to H. E. Clary. Each of said notes is for the principal amount of one thousand dollars, and each bears interest from date of Dec. 21, 1922, at eight per cent. There are no credits on either of said notes. These notes are to be collected for said H. E. Clary upon a contingent fee of fifty per cent. of the amount collected, of which said fifty per cent. I am to retain two thirds for my fee and the remaining one third is to be paid to Randall Evans Jr., for his fee. The other fifty per cent. is to be given to said H. E. Clary through Randall Evans Jr., his attorney at law. This 24 day of October, 1932. Wm. G. McRae."

13. "Thereafter the said . . McRae, who, at that time and at all of the times thereafter during the occurrences of the transactions hereinafter complained of, was associated with George G. Finch; associated the said . . Finch with him . . in the handling of said notes for collection under some agreement or arrangement beween those two, the details of which are not known to petitioner." 14. On or about February 24, 1933, the said McRae and the said Finch, as petitioner's attorneys, sued out in the municipal court of Atlanta, Fulton section, an attachment against Mrs. Silvey Speer McKenzie, one of the makers of said notes. 15. "Said attachment was levied upon the life interest of the said Silvey Speer McKenzie in . . real estate located in . . Atlanta, Fulton County, Georgia, on Edgewood Avenue near Peachtree Street, known as the Silvey Building, said life interest . . in said property being subject to a prior life interest in said property owned by Mrs. Kate Silvey Speer, the mother of the said Silvey Speer McKenzie. 16. Said Silvey Speer McKenzie at that time was a non-resident of the State of Georgia, and it was upon this ground that . . said attachment was sued out. 17. In due course, the said attachment suit came on for trial in the municipal court of Atlanta . . and a judgment was rendered in favor of petitioner for $3725.63 . . , and said judgment was rendered as a general personal judgment against the said Silvey Speer McKenzie, who had appeared and defended said suit, and was also made a special lien upon said life in-

terest of the said Silvey Speer McKenzie in said Silvey Building. 18. In due course, the said judgment having become final, upon the overruling of a motion for new trial and no appeal having been entered, and the said life interest of the said Silvey Speer McKenzie was sold under the judgment and fi. fa. issued as aforesaid in favor of petitioner. 19. The said life interest of the said Silvey Speer McKenzie . . was bought in at said sale for petitioner on said judgment. 20. Thereafter certain litigation concerning the validity of the sale and the right of petitioner, as the purchaser at said sale, to the possession of said property ensued, and this resulted in a judgment in favor of petitioner as being the legal purchaser of said interest and as being vested with the title to said life interest . . which had formerly belonged to . . Silvey Speer McKenzie. 21. After this litigation, the defendants William G. McRae and George G. Finch, continuing to act in said matter as the attorneys for petitioner under their employment hereinabove . . set out, began negotiations looking to a sale of the interest which petitioner had acquired in said property, as aforesaid. 22. On or about December 21, 1934, Mr. R. C. Mizell, who was associated in the real estate business with Forrest & Frank Adair, real-estate agents and brokers in the City of Atlanta, approached the said McRae and the said Finch with a . . proposition looking to the acquiring and consolidation of all of the several interests in said real estate known as the Silvey Building, including the interest which . . had been acquired as aforesaid by petitioner. 23. On December 21, 1934, . . William G. McRae and . . George G. Finch made a written proposition to the said R. C. Mizell in a letter dated December 21, 1934, a copy of which is hereto attached, marked Exhibit A and made a part hereof. 24. Petitioner was not informed of the proposition which was made by the said McRae and the said Finch, as just above set out and as embodied in the letter . . referred to as exhibit A; and petitioner did not know that said proposition had been made by them or that any negotiations were being carried on by the said McRae and the said Finch with the said R. C. Mizell, or with the said Forrest & Frank Adair concerning said matter; and petitioner did not discover these facts until the middle or latter part of the year 1936. 25. On or about March 1, 1935, the negotiations between the said . . Mc-

Rae and George G. Finch with the said R. C. Mizell and Forrest & Frank Adair had reached the point where it was practically certain that the life interest in said property which had formerly belonged to Silvey Speer McKenzie, and which was then held and owned by petitioner as aforesaid, could be sold for a sum approximating at least . . $11,000 . . to . . $12,000. 26. Petitioner . . was not informed by the said . . McRae and/or the said . . Finch of the fact that said negotiations were in progress or anything whatever concerning said negotiations, and . . did not discover said facts until the middle or latter part of . . 1936.

"27. On or about March 1, 1935, petitioner, who lived near Thomson, McDuffie County, Georgia, was requested by the said . . McRae to come to Atlanta in connection with some proposition for the settlement of his judgment and claim against said Silvey Speer McKenzie and his claim and interest in and to said property, which he had acquired under said judgment as hereinbefore set out; and petitioner did . . come to Atlanta and to the office of the said . . McRae on or about March 1, 1935. 28. Upon arriving at said office of the said . . McRae (which was also the office of George G. Finch, Ful-Kalb Inc., and C. J. Camp . . ), petitioner met the said . . McRae. 29. The said . . McRae, at said time, stated to petitioner, in substance, that he had finally found a purchaser for said life interest in said property who would . . pay . . $2700 for it, and that he (McRae) advised petitioner to accept that amount as it was in McRae's opinion the best offer which could be obtained, as he (McRae) and the said Finch had been trying to dispose of it ever since it had been acquired by petitioner; and petitioner inquired of . . McRae who the purchaser was and was told it was 'the Adairs.' During said conversation between petitioner and . . McRae . . the said . . Finch was present and sanctioned what was said by . . McRae. 30. Petitioner, acting upon the statements which had been made to him as just above set out and upon the advice of . . McRae and . . Finch, agreed to accept said proposition; and he was thereupon presented with a deed and requested to sign the same by the said . . McRae and the said . . Finch, and petitioner did sign said deed. 31. Defendant C. J. Camp who, as aforesaid, was president of Ful-Kalb

Inc., was present in said office at said time and heard and knew what was said and what transpired, as just above set out. 32. The deed which petitioner was requested to sign, and which he did sign as aforesaid . . conveyed to said Ful-Kalb Inc. the life interest which petitioner had acquired in said Silvey Building, as aforesaid. 33. Petitioner did not know what Ful-Kalb Inc. was, but relying upon the statements which had been made to him by the said McRae and the said Finch, he assumed that it was some concern owned or controlled by 'the Adairs.' 34. In this connection, petitioner shows that while he was present in said office and just after the conversation had occurred between him and . . McRae and . . Finch as above related, the said McRae had his stenographer or secretary to call some Adair over the telephone and the said McRae went into another office, leaving petitioner and . . Finch and the said Camp in conversation while he (McRae) had some telephone communication with some one, presumably one of 'the Adairs.' And immediately after said telephone conversation the said McRae returned to where petitioner, Finch, and Camp were, and stated to petitioner that it would be about an hour before the deal could be closed and the money collected, and that if petitioner had any other business to attend to he might go and return in about an hour. 35. Petitioner was paid by the said McRae on said date . . $1000 . . the said McRae and the said Finch stating to petitioner that the amount which was being realized from said property was . . $2700; and out of said sum there was to be held for a payment or settlement with Mrs. Nellie Pearl Neal, who was the original payee of said note and who still claimed to have some interest in it, the sum of . . $700; and . . $1000 of said sum was to be retained by the said McRae and Finch as attorneys' fees under the agreement and contract hereinbefore set out. 36. Petitioner shows that as a matter of fact Ful-Kalb Inc. was a mere tool or instrumentality and used as such for the said . . McRae . ., Finch and . . Camp, and that the deed above referred to was taken in that name for the purpose of enabling the said . . McRae . . , Finch and . . Camp to defraud petitioner and to mislead him into believing that the sale of the property was for the sum of . . $2700.

"37. Petitioner shows that at that time the negotiations between

the defendants and Forrest & Frank Adair and R. C. Mizell had progressed to such an extent that a conveyance had already been executed by Frances Aurelia McKenzie conveying her life interest in said property to Fred Roberts Operating Company, a corporation, in the name of which the said Forrest & Frank Adair and R. C. Mizell were consolidating the ownership of the various interests in said property, and a quitclaim deed had been executed by the said Silvey Speer McKenzie releasing to the said Roberts Operating Company any interest she might own in said property, negotiations had been had by Forrest & Frank Adair and the said R. C. Mizell with Mrs. Katie Silvey Speer for the purchase of her interest in said building, and negotiations had been opened by the said Forrest & Frank Adair and the said R. C. Mizell with a corporation by the name of Olympia Investment Company looking toward the resale of all of the interests in said property by the Fred Roberts Operating Company to said Olympia Investment Company. The price at which the said property was being offered, and the price at which said property was sold about one month thereafter, to the said Olympia Investment Company by the said Fred Roberts Operating Company was . . approximately . . $60,000. In the price of . . $60,000 at which said property was being offered, and at which it subsequently was sold to the said Olympia Investment Company by said Fred Roberts Operating Company, the interest in said property owned by petitioner was valued at approximately . . $11,200; and, when the property was actually sold · to said Olympia Investment Company by said Fred Roberts Operating Company on April 5th, 1935, the sum of . . $11,200 was actually paid as the value of the interest formerly owned by petitioner, and the said defendants at said time actually received . . $11,200 as the price of the interest in said building owned by petitioner and acquired from him by the defendants under the circumstances set out in this petition. 37-a. The sale of the interest in said property formerly belonging to petitioner by Ful-Kalb Inc. to Fred Roberts Operating Company and the sale of all of the various interests in said property by said Fred Roberts Operating Company to said Olympia Investment Company were the direct results and outgrowth of the negotiations entered into by and between the defendants McRae and Finch and the said R. C. Mizell and Forrest & George Adair

on the 21st day of December, 1934, and which were pending and in progress at the time of the purported purchase by Ful-Kalb Inc. of the interest in said property belonging to your petitioner on the 1st day of March, 1935.

"38. The said . . McRae . . Finch and C. J. Camp knew that said interest could be disposed of for approximately that amount—$11,200—at the time petitioner signed said deed as aforesaid; but, for the purpose of misleading and defrauding petitioner, they kept this information from petitioner, and stated to him as aforesaid that . . $2700 was the best price which could be obtained for it; and petitioner relied and acted upon said representations and statements. 39. Petitioner shows that within about a month thereafter, to wit, on April 5th, 1935, there was paid to the said McRae, ostensibly as attorney for Ful-Kalb Inc., the sum of . . $11,200 for said interest in said property; that is, the interest which had been acquired by petitioner as hereinbefore set out. 40. In this connection, petitioner shows that the said McRae and the said . . Finch also misled petitioner's attorney, Randall Evans Jr., Esq., and represented to him (the said Randall Evans Jr.) that the amount at which said interest was sold was . . $2700, and paid the said Randall Evans Jr. his portion of the fee on said basis. 41. Petitioner shows that the said . . McRae and the said . . Finch occupied toward petitioner the relation of attorneys, and that they were under the duty and obligation toward petitioner, as their client, to exercise the utmost good faith and to keep petitioner correctly informed as to the status of the matter in which they were representing him. Petitioner shows that the said defendants McRae and Finch, instead of dealing openly and in good faith with him, took advantage of the confidence which petitioner imposed in them, and misled petitioner to his injury and damage. 42. Petitioner shows that the said C. J. Camp, who acted in said matter for himself and as the president and executive officer of Ful-Kalb Inc., knew of the relation which existed between petitioner and the said McRae and Finch, and knew of the fact that said interest in said property was worth and would be sold for a very much larger amount than petitioner had been led to believe; and he (the said Camp), knowing of these facts, conspired and acted with the said McRae and the said Finch in perpetrating the wrongs and fraud upon peti-

tioner, as set out in this petition. 43. Petitioner shows that under the law of Georgia an attorney had no right to secretly make a profit at the expense of his client, and that the said McRae and the said Finch did this and, in doing so, they were aided, abetted and assisted by the said Camp who acted, as aforesaid, for himself and for said Ful-Kalb Inc. 44. Petitioner alleges that because of the wrongful and fraudulent conduct herein set out the said McRae and the said Finch should not be allowed any part of said money which was realized from the sale of said interest in said property for fees, and that they are not entitled to any fees out of it because of their unfaithful and fraudulent conduct toward petitioner. 45. Prior to the filing of this suit, petitioner has caused a written demand to be served upon the said defendants demanding that they pay over to him the said fund, amounting to . . $9500."

The letter referred to in paragraph 23 reads as follows:

"Mr. R. C. Mizell,                                    December 21st, 1934.

"1202 Citizens & Southern Bank Bldg., Atlanta, Georgia.

"Dear Sir: We have acquired the life-interest of Silvey Speer McKenzie in the property known as the Silvey Building, Atlanta, Georgia, which interest is described in the public records of Fulton County, Georgia, in the will of John Silvey. We propose, with your assistance, to acquire the life-interest of Adeline Silvey Speer in the same property and also the interest of Frances McKenzie in the same property, and to handle the interest already acquired and those proposed to be acquired for our interest and profit. In connection with negotiations relating to the various interests above described you have rendered us valuable services. In consideration of the services already rendered we give and grant to you the exclusive right to sell or lease for us the interest which we now hold and such other interests as we may acquire. The price and terms of any sale or lease shall be subject to approval by us.

"Your entire fee for services already performed and for such other services as you may perform on our behalf in connection with this property shall be one third of the net profit which we may make, computed as follows: There will be deducted from the gross receipts which we receive from the property, through lease or sale of any interest, any and all expenditures which we make, subject to your approval, in acquiring any or all interests in the property

and in operating it; these items shall be limited to: 1. Your expenses, incurred with our prior approval, in conducting negotiations on our behalf. The total amount of these will be repaid to you from receipts from the property. 2. All operating expenses of the property including taxes, insurance, agents' commissions, where other agents are employed, repairs, improvements, loan commissions and interest on loans and repayments on loans, should any be placed on the property. The above expense items will be deducted from the gross receipts. One third of the remainder shall be paid to you.

"It is understood and agreed that it may be advantageous to employ other real estate agents to perform services in connection with handling the property. In such case their fees shall not exceed those determined by the rates of the Atlanta Real Estate Board, and their employment shall be subject to our joint approval. If such fees are paid they shall be considered a legitimate expense to be deducted as provided in paragraph 2 above. Nothing in this agreement shall be a bar to the employment of the firm of Forrest and Frank Adair to perform any real estate services in connection with the property, notwithstanding your present association with that firm. Should we secure the present life interest of Mrs. Adeline Speer and the remainder interest of Frances McKenzie and hold any interest in the property longer than one year, you will be entitled to one third of the net income, if any, from that interest, computed as provided for in paragraph 2 above, payable at the end of each year in which the property is held. It is agreed that your expenses or those of Frank Adair, acting as your agent, on a proposed trip to California in the latter part of this December shall be a legitimate expense, provided that it shall not exceed $300.

"All of the above agreement is conditioned on your securing for our benefit the present life estate of Adeline Silvey Speer and the remainder interest of Frances McKenzie; we also agree to sign a loan deed for such amount as may be necessary to purchase the interests aforementioned, said loan to be procured by you.

"The rights conferred by this agreement shall continue for a period of sixty days from date as relates to the exclusive right to sell or lease the present interest now held by us. This paragraph

void if other interests above described are acquired within sixty days.

"Very truly yours, George G. Finch. Wm. G. McRae."

Before the petition was amended, the four defendants filed their joint demurrers, general and special, to the original petition. The judge overruled all of the special demurrers except the one attacking paragraph 37 of the petition. That demurrer was sustained, with leave to amend the paragraph. The general demurrer was not passed on. The plaintiff amended by striking paragraph 37, and substituting a new paragraph of the same number, and adding a paragraph numbered 37-a. The defendants excepted to the overruling of the special demurrers, and that judgment is assigned as error in the cross-bill of exceptions. The defendants renewed their demurrers, general and special, to the amended petition, McRae and Finch filing a joint demurrer, and the other two defendants a joint demurrer. The judge sustained the general demurrers and dismissed the case, the special demurrers not being considered. The general demurrer of McRae and Finch to the petition as amended alleged: 1. That the petition "fails to set forth a cause of action against these defendants, or either of them." 2. The petition "fails to set forth any material fact which these defendants, or either of them, were under a legal duty to communicate to plaintiffs." 3, 4, 5. It is not alleged in the petition that at the time the plaintiff executed his deed to Ful-Kalb Inc. there was any person, other than that corporation, who had made any agreement or offer of any kind to purchase said interest of plaintiff for any sum, or that there was any other person ready, able and willing to buy said interest for any price, or that there was any other person who had in any manner indicated a desire to purchase said interest for any price whatsoever. The general demurrer to the amended petition filed by Camp and Ful-Kalb Inc. is similar to the general demurrers of the other two defendants. However, in the demurrer of Camp and Ful-Kalb Inc. there are several paragraphs attacking various paragraphs of the amended petition. These paragraphs are denominated therein as general demurrers, but a reading of them discloses that they are in fact special demurrers, and they will be so treated.

Did the amended petition set out a cause of action against the

four defendants? The petition alleges, and the facts stated therein tend to support the allegation, that after the end of the litigation resulting in the acquirement by the plaintiff of the property in question, the defendants McRae and Finch *continued* to act in said matter "as the attorneys for petitioner under their employment hereinbefore stated, and began negotiations looking to a sale of said property." We think therefore that the petition showed that McRae and Finch were still acting as the plaintiff's attorneys when they advised him to sell the property for $2700 and when it was sold for that amount. So the question here is narrowed down to whether the petition, properly construed (most strongly against the pleader) shows that the alleged wilful and fraudulent conduct of the defendants, in deceiving the plaintiff by misrepresenting to him the facts of the transaction, and by concealing from him facts which it was their duty to communicate to him, resulted in any actual monetary damage to the plaintiff. It was alleged in paragraph 37 of the original petition "that at that time [when plaintiff sold his interest to Ful-Kalb Inc.] the various interests in said property had either been acquired or there were offers and acceptances amounting to contracts by which said interests could and would be acquired, totaling the sum of approximately $60,000 for the entire property, and that of this sum $11,200 was to be paid for the life interest which had formerly belonged to the said Silvey Speer McKenzie, and which was owned and held by petitioner as aforesaid." That paragraph however was stricken on demurrer. And there is no allegation in the amended petition that, at the time of the sale of the plaintiff's interest to Ful-Kalb Inc., there was any person or corporation other than Ful-Kalb Inc. who was ready, able and willing to buy said interest for any sum, or who had indicated any desire to purchase it. This court will take judicial cognizance of the fact that the value of such an interest is highly, if not wholly, speculative. If its original owner, Silvey Speer McKenzie, outlived her mother, the interest might then be of some value, but, if her mother outlived her, the interest would then have no value whatsoever. While the petition contains some broad allegations that the interest was worth much more than the $2700 paid for it by Ful-Kalb Inc., we do not think that the facts stated therein support the allegations. Those facts fail to show that, *on the date of the*

*purchase of plaintiff's interest by Ful-Kalb Inc.* the sum of $2700 was not an adequate price for it, notwithstanding the alleged fact that *subsequently* it was resold by Ful-Kalb Inc. for a much larger sum. In other words, the petition fails to affirmatively show that the alleged acts and conduct of the defendants resulted in any actual monetary damage to the plaintiff. The cases cited in behalf of the plaintiff in error are differentiated by their particular facts ·from this case.

In our opinion the amended petition was subject to the general demurrers filed by the four defendants. In view of this ruling it is unnecessary to pass upon the assignments of error in the cross-bill of exceptions.

*Judgment on main bill of exceptions affirmed; cross-bill dismissed. MacIntyre and Gardner, JJ., concur.*